**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**


**SAMUEL PAUL BLAKE,**

        **Petitioner,**

**vs.**                                                **Case No.   10-cv-238-DRH**

**MARCUS HARDY,**

        **Respondent.**


**MEMORANDUM AND ORDER**

**HERNDON, Chief Judge:**

## I.   Introduction

This case is before the Court on a petition for writ of habeas corpus (Doc. 1).   Respondent has filed a response to the petition (Doc. 22).   Petitioner has filed a reply (Doc. 37).   Based on the following, the Court **DENIES** and **DISMISSES** petitioner's habeas petition (Doc. 1).

## II.   Background

**A.   Procedural Background**

**1.   Facts**

Petitioner is currently incarcerated in the Stateville Correctional Center where he is serving a natural life sentence for four counts of predatory criminal sexual assault and a term of ten years imprisonment for a criminal sexual assault (Doc. 22 Ex. A).

Petitioner was charged in Randolph County on four counts of predatory criminal sexual assault of a child and one count of criminal sexual assault (Doc. 22 Ex. A, B).  Petitioner was charged with sexually assaulting his stepdaughters, M.P. and P.G.   It was alleged that petitioner had sexual intercourse with P.G. during the time periods of September 2000 through October 2000, November 2000 through December 2000, and January 2001 respectively (*Id*. at p. 2).  It was also alleged that petitioner had sexual intercourse with M.P. during August 2000 through September 2000 (*Id*.).   The criminal sexual assault count alleged that petitioner had sexual intercourse with M.P. during the period of January 31, 2001 through February 2001, after M.P. turned thirteen (*Id*).

At trial, Randolph County Sheriff's Office Detective Donald Krull testified that during a March 29, 2001 interview with P.G., P.G. told him that petitioner had sexual intercourse with her and that she had seen him have sexual intercourse with M.P (Doc. 22 Ex. B at p. 2).   She also stated petitioner took nude photos of her and M.P., but destroyed them, and that she once had sexual intercourse with petitioner while on his mail truck route in Monroe County (*Id*.).

M.P. testified at trial that petitioner had sexual intercourse with her in his bed, on the couch, in the basement, and on his mail truck route.   She testified that she once saw petitioner having sexual intercourse with P.G. and that petitioner took M.P.'s clothes off and threatened her (*Id*.).   P.G. also testified about her sexual encounters with petitioner.   She testified that she had sexual intercourse with Petitioner on his bed and couch (*Id.*).   She also identified a third sexual encounter

with Petitioner which occurred on a day her mother took her brother to the doctor and to Wal-mart to get a prescription refilled (*Id*.).

Petitioner's wife and mother of the victims testified that she believed her daughters' allegations were false and made out of anger that petitioner made them do their homework and objected to their being around older boys. Petitioner's wife also testified that petitioner was with her on the day she took her son to the doctor (*Id*.).   Petitioner was found guilty on all five counts and sentenced to natural life (*Id*. at p.3).

## 2.    State Court Proceedings

After petitioner's guilty verdict, he appealed his sentence to the state appellate court, arguing that 720 ILCS 5/12-14.1(b)(1.2)**,** the provision requiring a sentence of natural life for predatory criminal sexual assault convictions involving two or more children was unconstitutional under the proportionate penalties clause of the Illinois Constitution (Doc. 22 Ex. A at p. 3).   The Illinois Appellate Court affirmed petitioner's sentence (Doc. 22 Ex. A).   Petitioner filed a petition for leave to appeal (PLA) to the Illinois Supreme Court, but the supreme court denied his PLA on December 3, 2003 (Doc. 22 Exs. F & G).

On September 15, 2003, petitioner filed a post-conviction petition pursuant to 725 ILCS 5/122-1, et seq, and a petition for relief from judgment under 735 ILCS 5/2-1401 (Doc. 22 Ex. H).   Petitioner, by his counsel, then filed an amended post-conviction petition (Doc. 22 Ex. I).   In the petition, petitioner raised the following issues:

(1)     Trial counsel was ineffective in:

    a.     refusing to give an opening statement;

    b.     failing to properly cross-examine state witnesses;

    c.     giving a closing argument that was prejudicial to Petitioner;

    d.     failing to file proper motions;

    e.     failed to preserve errors in trial in effective motion for new trial;

    f.     failed to introduce exculpatory DNA evidence;

    g.     failed to present available evidence to support defense;

(2)     Petitioner was denied a fair trial by the prosecutor's following actions:

    a.     gave his personal opinion;

    b.     made improper comments not based on the evidence;

    c.     caused a *Brady* violation;

    d.     allowed perjured testimony to go uncorrected;

(3)     Petitioner was denied a fair trial and equal protection under the law when:

    a.     the trial court granted the State's motion for allowance of evidence of other crimes;

    b.     the trial court erred in granting the State's motion to continue which violated petitioner's right to a speedy trial;

    c.     the trial court erred by allowing State's hearsay testimony;

    d.     the trial court erred in sentencing petitioner under an unconstitutional method of determining the maximum

sentence;

(4)     The direct appeal's counsel was ineffective in:

    a.     failing to raise the issue of ineffective assistance of trial counsel;

    b.     failing to raise the issue of prosecutor's inappropriate comments and actions during trial; and

    c.     failing to make proper arguments to raise constitutional issues involved with the suppression of evidence by state's attorney and public defender.

(5)     Petitioner was entitled to a new trial based on newly discovered evidence, which made his conviction unreliable and in violation of the 14th Amendment (namely cell phone bills, letter from Dr. Walls stating petitioner was present on January 22, 2001 at doctor's appointment, and receipts from Wal-mart pharmacy showing dates and times of prescriptions filled on January 22, 2001).

(Doc. 22 Ex. H at pp. 11- 16; Ex. I at pp.2-3).   The petition was denied by the trial court (Doc. 22 Ex. J).   Petitioner appealed the trial court's denial to the state appellate court, where he was represented by the Office of the Appellate Defender (OSAD).   Counsel moved to withdraw, finding no reasonable argument in support of the appeal (Doc. 22 Exs. B & K).

    Petitioner responded to the motion to withdraw, arguing that his claims had merit.   He specifically pointed out the following claims:

(1)     trial court denied his due process rights to have a hearing on his

post-conviction petition;

 (2) the prosecutor during the trial:

  a. withheld exculpatory DNA evidence;

  b. improperly gave his personal opinion during closing arguments;

  c. allowed perjured testimony to go uncorrected;

 (3) Petitioner's trial counsel was ineffective in:

  a. failing to investigate;

  b. failing to call alibi witnesses;

  c. failing to obtain and present physical evidence to support defense's theory;

  d. failing to obtain exculpatory DNA evidence;

  e. failed to call expert witness to testify about DNA results;

  f. failed to impeach with prior inconsistent statements;

  g. failed to preserve errors in motion for new trial;

  h. failed to give opening statement;

 (4) newly discovered evidence shows that someone other than petitioner had sexual intercourse with victims showing that he was actually innocent;

 (5) post-conviction counsel was ineffective in failing to call witnesses to verify the evidence in the petition;

 (6) trial court violated his rights to fair trial by:

  a. granting the State's motion to continue which violated his right to a fair trial;

      b.       allowing state to present other crimes evidence;

      c.       allowing hearsay testimony;

      d.       imposing an unconstitutional sentence.

(Doc. 22 Ex. L).   The appellate court granted the motion to withdraw and affirmed the trial court's judgment on the post-conviction petition (Doc. 22 Ex. B).

Petitioner then filed a petition for leave to appeal (PLA) with the Illinois Supreme Court.   His petition there argued:

(1)     the trial court denied him due process by stating that the hearing on this petition was held when it was not held;

(2)     the trial counsel was ineffective in:

      a.       failing to investigate available defense;

      b.       failing to obtain evidence to prove falsity of the charge;

      c.       failing to impeach witnesses with inconsistent statements;

      d.       failing to obtain and enter exculpatory DNA evidence;

      e.       failing to file motions addressing the DNA evidence;

      f.       failing to address the state's request for a continuance;

(3)     trial court denied his rights by:

      a.       granting state's motion for continuance which violated his right to speedy trial

      b.       constitutionality of the sentence imposed;

(4)     the prosecutor denied his due process rights by:

      a.       withholding DNA evidence which violated Brady;

       b.     gave his personal opinion during closings;

(Doc. 22 Ex. M).   The Supreme Court denied the PLA (Doc. 22 Ex. N).

**B.**    **Habeas Petition**

On April 1, 2010, petitioner filed the instant habeas petition. Petitioner raised the following issues in his petition, as set forth by respondent in his responsive brief:

(1)    trial counsel was ineffective for failing to:

      a.     investigate and obtain pertinent available evidence;

      b.     call alibi witnesses;

      c.     file certain pre-trial and post-trial motions;

      d.     give an opening statement;

      e.     give an effective closing argument;

      f.     properly cross-examine state witnesses;

(2)    petitioner's right to fair and impartial trial was violated when the prosecutor:

      a.     withheld DNA results from defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963);

      b.     gave his personal opinion during closing argument;

      c.     allowed false testimony to go uncorrected;

      d.     delayed trial to obtain "non-material" DNA results;

      e.     failed to ascertain origin of DNA evidence;

(3)    the trial court violated petitioner's rights by granting the state's

motions:

      a.     to allow other crimes evidence;

      b.     for a continuance to obtain DNA test results;

      c.     to allow hearsay evidence;

(4)     the trial court abused its discretion and violated petitioner's procedural due process, Fifth Amendment, and Fourteenth Amendment rights by circumventing the provisions of Illinois's Post-Conviction Hearing Act;

(5)     petitioner is actually innocent;

(6)     the cumulative effect of the foregoing errors violated Petitioner's right to a fair and impartial trial; and

(7)     the direct appeal counsel was ineffective for failing to raise "other issues of error" and for poorly raising the sentencing issue.

### III.   <u>Analysis</u>

The Anti-Terrorism and Death Penalty Act of 1996 ("AEDPA") allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available state remedies and fairly presented all of the claims in his habeas petition to the state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004); *Spreitzer v. Schomig*, 219 **F.3d**

639, 644 (7th Cir. 2000).

**A.     Procedural Default**

Respondent argues that a number of Petitioner's claims are procedurally defaulted.  In order for a federal court to address the merits of a habeas petition, the petitioner must have exhausted his available remedies in state court and not have any of his claims procedurally defaulted.  28 U.S.C. § 2254(b)(1)(A); *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991).   These limitations allow state courts a fair opportunity to hear and act on a petitioner's claims.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

The procedural default doctrine prevents the federal court from reaching the merits of a petitioner's habeas petition when either "(1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004)(*citing Coleman v. Thompson*, 501 U.S. 722, 735 & n.1, 111 S.Ct. 2456, 115 L.Ed.2d 640 (1991)).  It is the second type of procedural default that respondent argues is at issue in this case.  A petitioner is required to present his federal habeas claim through one complete round of state court review, either on direct appeal or through a post-conviction petition.  *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004); *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999)(one

complete round o review includes a petition for discretionary review to highest court in state and applies equally to claims brought up on collateral review).   In Illinois, this means that a petitioner must have raised the claim on appeal and then presented the claim again in a petition for leave to appeal to the Illinois Supreme Court.   *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007).   When a petitioner has exhausted his state court remedies, but fails to raise his federal claim at each level of state review then his claim is procedurally defaulted.   *Id*.; *Perruquet*, 390 F.3d at 514.

A petitioner's claim which has been procedurally defaulted is usually barred from habeas review, unless the petitioner can show cause and prejudice for the default or he can show that the denial of relief will result in a fundamental miscarriage of justice.   *Coleman v. Hardy*, 628 F.3d 314, 318 (7th Cir. 2010) (citing *Holmes v. Hardy*, 608 F.3d 963, 967 (7th Cir. 2010)); *Lewis*, 390 F.3d at 1026; *Gonzales v. Mize*, 565 F.3d 373, 381 (7th Cir. 2009). A petitioner can show cause by demonstrating that some sort of external factor prevented him from presenting his habeas claim to the state court.   *Lewis*, 390 F.3d at 1026. "Prejudice is established by showing that the violation of the petitioner's federal rights 'worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"   *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)(emphasis in original)).   A petitioner may also overcome a procedural default by showing that the denial will result in a fundamental miscarriage of

justice.   To show a fundamental miscarriage of justice, the petitioner must show that "he is actually innocent of the offense…, [in other words] that no reasonable juror would have found him guilty of the crime but for the error(s) he attributes to the state court."   *Id*. (citing *Schlup v. Delo*, 513 U.S. 298, 327-29, 115 S.Ct. 851, 130 L.Ed. 2d 808 (1995)).   To show actual innocence, a petitioner must support his allegations "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."   *Schlup*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808; *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003).

Thus, "[f]ederal habeas relief is available only when a petitioner has given the state courts a full and fair opportunity to review a claim, when there is cause and prejudice for the failure to raise the claim in state court or when the default would lead to a fundamental miscarriage of justice."   *Steward v. Gilmore*, 80 F.3d 1205, 1211 (7th Cir. 1996)(citations omitted).

### 1.   Ineffective Assistance of Counsel

Respondent argues that two of petitioner's claims regarding his trial counsel are procedurally defaulted.   Specifically, respondent argues that Petitioner's claims that his trial counsel was ineffective for failing to investigate and obtain pertinent available evidence (Claim 1(a)) and for failing to call alibi witnesses (Claim 1b) are procedurally defaulted because petitioner failed to raise the issues in his initial post-conviction proceeding in the state trial court.   Respondent acknowledges that petitioner raised the issues on appeal of his post-conviction

petition and in his PLA to the Illinois Supreme Court but did not raise the issue initially at the trial court level. Petitioner argues that the claims are not procedurally defaulted because they were included in the original petition under newly discovered evidence. Petitioner claims that while the titles in the petition are slightly different, the two arguments in both his original petition and the subsequent petitions are the same.

The Court finds that petitioner's claims regarding the ineffectiveness of his trial counsel for not presenting pertinent evidence or alibi witnesses, as it relates to Dr. Walls and cell phone bills, was adequately presented through one full round of state review. Petitioner's original state post-conviction petition included a claim regarding newly discovered evidence (Doc. 22 Ex. H at pp. 15-18). In that petition, Petitioner argued that he had received cell phone bills and testimony from Dr. Walls which would have provided petitioner with an alibi and demonstrated that he could not have committed the alleged sexual assaults on M.P. and P. G. Specifically, M.P. testified that petitioner sexually assaulted her on January 31, 2001, but petitioner now has cell phone records which allegedly show that petitioner was not in the state on January 31, 2001. P.G. also testified at trial that she was sexually assaulted on January 22, 2001 while her mother took her half-brother to the doctors and to Wal-mart to pick up a prescription. Petitioner's petition argued that he had testimony from Dr. Walls indicating that petitioner was with P.G.'s mother at the doctor's visit and has evidence showing dates and times indicating when the prescription was picked up from Wal-mart which provide

petitioner with an alibi. These issues were raised by Petitioner's appointed counsel in his amended petition (Doc. 22 Ex. I) and both on appeal and in his PLA (Doc. 22 Ex. B).

Petitioner's claims in his post-conviction proceeding are the exact claims he seeks to raise in his current petition before this Court.   Petitioner argues that his counsel was ineffective in failing to obtain this evidence, including the cell phone records and alibi testimony in the form of Dr. Walls.    As the Court finds that petitioner properly raised these claims through one full round of state review, the Court finds that petitioner's claims are not procedurally defaulted.   The Court, thus, will consider the merits of petitioner's claims regarding the ineffectiveness of his trial counsel.

However, petitioner presents a new theory regarding his ineffective assistance of counsel for failing to obtain the Wal-mart receipts.   In his state post-conviction proceeding, petitioner argued that the Wal-mart receipts would have shown that he was with the victim's mother when the prescription was picked up at Wal-mart, providing petitioner with an alibi for when the alleged sexual assault with P.G. took place (Doc. 22 Ex. B at p. 20).   The Appellate Court found that the Wal-mart receipt was signed by petitioner's wife and thus did not indicate that petitioner was present with her at the time the prescription was picked up.   In petitioner's reply brief, however, he now argues that the Wal-mart receipts would show that petitioner was at work during the time that his wife was picking up the prescription and thus provides him with an alibi for the time that P.G. alleges

Petitioner had sexual intercourse with her.   However, this claim was not raised in his post-conviction petition.   The Appellate Court never addressed the issue of whether the receipt evidenced that petitioner was at work.   Petitioner also never raised this issue at trial in response to P.G.'s testimony.   As this claim was never raised, the Court finds that it is now procedurally defaulted.

Petitioner also raises other alibi evidence that he failed to raise in his state post-conviction proceeding.   Specifically, Petitioner argues that school records, his wife's work schedule, and his work schedule could have been used to refute the testimony of the two victims.   He also alleges that trial counsel failed to call the principal from the children's school, his wife's manager, and the other five children living in the home as alibi witnesses.   However, none of these claims were raised at any State proceeding and petitioner has failed to offer any reason as to why these claims were not presented.   Thus, the Court finds these claims to be procedurally defaulted as well.

**2.    Prosecutorial Errors**

Respondent argues that petitioner's claim that the prosecutor failed to determine the origins of the DNA (Claim 2e) is procedurally defaulted because it was not raised in his post-conviction petition to the trial court.[1]   Petitioner admits in his reply brief that this claim was not raised in the trial court on collateral review

---

[1] Respondent also argues that Petitioner's claim that the prosecutor delayed trial to obtain nonmaterial DNA evidence is procedurally defaulted.   However, the Court finds that claim is best dealt with on Respondent's argument that the claim is non-cognizable and thus the Court will save discussion of that claim until its section on whether certain of Petitioner's claims are non-cognizable.

(Doc. 37 at p. 6).   However, petitioner argues that his failure to raise this issue can be excused through cause and prejudice.   Petitioner argues that there was an external impediment which prevented him from raising this issue at the trial level. Petitioner's brief, however, simply argues that he responded to his appointed counsel's *Finley* brief at the trial court level, arguing that if the DNA evidence was material, it was material to the defense as well.   However, his argument does not offer an explanation as to why he failed to raise the issue of the prosecutor's failure to ascertain the origins of the DNA in his post-conviction case, nor does it point to any external force which prevented him from raising the issue.   Thus, the Court finds that petitioner has failed to show cause for failing to raise this issue in his post-conviction proceeding and thus his argument is not an excuse to procedural default.

Petitioner also argues that he should be excused from procedural default because the Court's failure to hear the claim would result in a fundamental miscarriage of justice, namely because, petitioner argues, he is actually innocent. In order to demonstrate actual innocence, a petitioner must support his allegations "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  **Schlup, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808; Gomez, 350 F.3d at 679.**   Petitioner offers evidence that the DNA collected from M.P.'s mattress did not belong to him or his step-sons.   Petitioner argues that the DNA evidence shows that someone other than the petitioner had sexual

relations with M.P.   However, even with this evidence, there was ample evidence in the record with which to find petitioner guilty.   Both M.P. and P.G. testified that petitioner sexually assaulted them and P.G. testified that she had seen petitioner having intercourse with M.P.   M.P. also testified that on another occasion, Petitioner had sexual intercourse with her while she, her half-brother Joshua Blake, and petitioner were riding with Petitioner on his mail route.   M.P. testified that she had to go to the bathroom and petitioner exited the truck with her, taking napkins and a flashlight, to a wooded area where she used the bathroom and then had intercourse with petitioner.   M.P.'s testimony was corroborated by the testimony of her half-brother, Joshua Blake, who testified that petitioner and M.P. exited the truck together and that they returned sometime later and Joshua asked them what took them so long.

Further, the DNA evidence does not exclude petitioner as the person who sexually assaulted M.P. and P.G.   While the DNA from M.P.'s mattress did not match Petitioner's DNA, there was never any evidence that petitioner had sexual intercourse with M.P. on her bed.   Instead, M.P. testified that she had intercourse with petitioner on petitioner's bed, the couch, in the basement, and in the woods while on his mail truck route.   P.G. testified that Petitioner had sex with her in petitioner's bedroom and on the couch.   There was no testimony from either victim that petitioner had sex with either of them on M.P.'s bed.   Thus, the fact that the DNA on M.P.'s bed did not match petitioner's DNA, does not demonstrate that no reasonable juror would have found him guilty, as none of the victims testified that

the assaults took place on M.P.'s bed.   Further, petitioner has not shown any evidence that this DNA was found in any of the locations where petitioner was alleged to have sexually assaulted either victim.   Accordingly, the Court finds that petitioner fails to show "actual innocence" which would excuse his default, and thus the Court finds that petitioner's claim regarding the prosecutor's failure to identify the origins of the DNA is procedurally defaulted.   This claim (Claim 2(e)) is, accordingly, **DISMISSED with prejudice**.

### 3.   Direct Appeals Counsel Ineffective for Poorly Raising Sentencing Issue (Claim 7b)

Respondent also argues that Petitioner's claim, that his counsel on direct appeal was ineffective for poorly raising the sentencing issue on appeal, is procedurally defaulted because Petitioner did not raise the issue at any level in his post-conviction proceedings in state court.   The issue was neither raised with the trial court in either his initial post-conviction petition or the amended petition, nor did Petitioner raise the issue on appeal of his post-conviction proceeding.

Petitioner admits that this claim was not raised in any previous state court proceeding, but argues that this claim was not in his petition because his post-conviction counsel failed to include the issue when amending the *pro-se* petition.   Petitioner argues that his counsel failed to advise him of the issue and did not communicate with Petitioner before filing his *Finley* brief and that Petitioner only responded to the issues raised in his counsel's brief and thus did not address the issue.   Petitioner also indicates that he did not have his past

filings to know which issues were previously raised when drafting his current habeas petition.   However, petitioner originally filed a *pro-se* petition in his post-conviction proceeding and his own filing did not include the issue regarding his appellate counsel's failure to properly raise the sentencing issue on appeal. Thus, the Court fails to see how appointed counsel's later revisions of petitioner's petition, which failed to include a claim that was not included in the original petition, could be an external factor which prevented petitioner from including the claim on the state court proceeding.   The evidence before the Court suggests that petitioner simply failed to include the claim in his petition, and thus this claim is now procedurally defaulted.

Petitioner also argues that this claim should be considered together with other errors made by his appellate counsel.   As a separate issue in his habeas petition, petitioner alleges that the cumulative effect of errors by his appellate counsel violated his right to a fair trial.   Respondent also argues that this claim is procedurally defaulted and the Court addresses that claim below.

### 4.    Cumulative Effect of Foregoing Errors (Claim 6)

Like with petitioner's claim regarding his appellate counsel's failure to properly raise sentencing issues, petitioner also acknowledges that he failed to raise the cumulative effect of errors claim in any state court proceeding.   Instead, petitioner argues that his counsel failed to advise him on the issue or include the issue in his post-conviction petition.   As the Court has previously pointed out, however, petitioner failed to include the claim in his original *pro se* petition.

Accordingly, this claim is also procedurally defaulted and thus the Court **DISMISSES** the claim **with prejudice**.

## B.     Non-Cognizable Claims

Respondent also argues that several of petitioner's claims before the Court are non-cognizable under § 2254.   These include petitioner's claims that the prosecutor violated his Fifth and Fourteenth Amendment rights by delaying trial to obtain "non-material" DNA results (Claim 2d), the trial court violated petitioner's rights by granting the state's motions (Claim 3), the trial court abused its discretion by not holding a hearing on petitioner's post-conviction petition in violation of the Illinois Post-Conviction Hearing Act (Claim 4), and petitioner's claim of actual innocence (Claim 5).

### 1.     Delaying Trial (Claim 2d)

Respondent claims that petitioner's Claim 2d is non-cognizable because the claim alleges only errors of state law.   Habeas relief is "unavailable to remedy errors of state law." *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")).   Thus, arguments presented in a habeas petition which are based on an incorrect application of Illinois law are not cognizable under §2254.   *Id.* (citing 28 U.S.C. § 2254(d)).   Here, petitioner's claim that the prosecutor violated his rights by delaying trial to obtain "non-material" DNA results is an issue of state law as it turns on whether the DNA evidence is

material under 725 ILCS §5/103-5(a).   Illinois statute allows for a prosecutor to obtain a continuance in order to obtain results of DNA testing that is "material" to the case.   Petitioner argues that the DNA was not material and thus there was no basis for seeking a continuance under 725 ILCS §5/103-5(a).   This claim focuses on an error of state law, namely whether the state was allowed to obtain a continuance under the statute.   Thus, the Court finds that this claim only seeks to remedy errors in state law which is not cognizable under § 2254.   Further, petitioner's similar claim (Claim 3b) that the trial court erred by allowing a continuance is also a matter of state evidentiary law that does not provide a basis for federal habeas relief.   *See Martin v. Evans*, 384 F.3d 848, 854 (7th Cir. 2004).

### 2.   Actual Innocence (Claim 5)

Respondent also argues that petitioner's claim of actual innocence is non-cognizable.   The Supreme Court has not resolved the issue of whether a petitioner may be entitled to habeas relief based on a freestanding claim of actual innocence. *McQuiggin v. Perkins*, --U.S.--, 133 S.Ct. 1924, 1931, 185 L.Ed.2d 1019 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404-05, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)).   Instead, the claim of actual innocence has only been used as a gateway to overcome an otherwise procedurally defaulted constitutional claim and have that claim heard on the merits.   *Id.*   While the Supreme Court has declined to decide the issue, they have cautioned that if actual innocence was recognized as an independent ground for habeas relief, the threshold showing for the right "would necessarily be extraordinarily high." *House v. Bell*, 547 U.S. 518, 554, 126 S.Ct.

2064, 165 L.Ed.2d 1 (2006) (quoting *Herrera*, 506 U.S. at 417, 418-19, 113 S.Ct.

853).   This standard would be much higher than the gateway standard set forth in

*Schlup*, which stated that petitioner's asserting actual innocence as a gateway to

having their petition heard had to establish that in light of new evidence it "is [was]

more likely than not that no reasonable juror would have found petitioner guilty",

and that at the very least a petitioner would have to offer more convincing proof of

innocence than in *Schlup*.   *Id*. at 537, 126 S.Ct. 2064, 165 L.Ed.2d 1; *See also*

*Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 139 L.Ed.2d 808 (1995).

Here, petitioner has not met this high standard.   All petitioner offers

is evidence that the DNA results did not belong to him or either of his stepsons.

However, petitioner acknowledges that the DNA was discovered on M.P.'s bed,

which is not one of the locations were petitioner was alleged to have had sex with the

minors (Doc. 22 Ex. B at p. 11).   Petitioner has not offered any compelling reason

why the DNA evidence proves that he did not sexually assault either victim.   Thus,

the Court finds that petitioner has not offered the type of convincing proof of

innocence that would be required in a freestanding actual innocence claim for

habeas relief.

### 3.    Denial off Evidentiary Hearing Under Illinois Post-Conviction Hearing Act (Claim 4)

Respondent also argues that petitioner's claim that the trial court

violated Illinois' Post-Conviction Hearing Act by denying petitioner an evidentiary

hearing on his post-conviction claims is also non-cognizable.   The power of the

court in a habeas petition is limited to reviewing violations of federal rights, so only if the state court has deprived a petitioner of some federal right may the federal court intervene.   *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004).   An error in state collateral review does not normally form the basis of a habeas petition as the constitution does not require states to provide collateral review of their criminal convictions.   Further state post-conviction collateral proceedings are civil in nature, and § 2254 only provides relief for violations of federal law which occur in criminal convictions.   *U.S. ex rel. Jones v. Chrans*, 187 F.Supp.2d 993, 1002 (N.D. Ill. 2002) (citing 28 U.S.C. § 2254(a)).   Therefore, petitioner cannot obtain relief for errors that occurred during the state post-conviction proceedings, as § 2254 does not afford relief for those type of errors.   *Id*. (citing *Pennsylvania v. Finley*, 481 U.S. 551, 556-57, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)).   Further, plaintiff claims that the state court violated the Illinois Post-Conviction Hearing Act by denying him an evidentiary hearing.   There is no federal right to a post-conviction hearing at the state level, nor has Petitioner alleged an independent constitutional right that failing to have a hearing violates**.**   *Id.; Liegakos v. Cooke,* 106 F.3d 1381, 1384-85 (7th Cir. 1997); *Montgomery v. Meloy,* 90 F.3d 1200, 1206 (7th Cir. 1996)*.*   Accordingly, the Court also finds petitioner's claim regarding the state court's failure to hold an evidentiary hearing on petitioner's post-conviction collateral review to be non-cognizable.

**4.    Evidentiary Issues at Trial (Claim 3)**

Petitioner's third claim, seeking relief on the trial court's alleged errors

in granting the state's evidentiary motions, is also non-cognizable. Petitioner argues that the trial court violated his rights in granting motions which allowed other crimes evidence and allowed hearsay evidence.[2] Both of these claims deal with evidentiary decisions made by the trial court which are a matter of state law. *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) ("Because a state trial court's evidentiary rulings and jury instructions turn on state law, these are matters that are usually beyond the scope of federal habeas review."). The Seventh Circuit has recognized that evidentiary rulings can be the subject of habeas review if petitioner establishes that the incorrect rulings were "so prejudicial that it violated his due process right to a fundamentally fair trial, creating a likelihood that an innocent person was convicted." *Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001). Petitioner points to two evidentiary rulings by the trial court, a ruling allowing evidence of other crimes which occurred after the dates of petitioner's alleged crime against M.P. and P.G. and a ruling allowing D.C.F.S. and a sheriff's deputy to testify as to statements made by the alleged victims in this case.

In ruling on both evidentiary issues, the Appellate Court relied on Illinois statutes which allowed for certain testimony, including testimony of similar acts and hearsay testimony, in special cases where a defendant is being prosecuted for sexual acts perpetrated against a minor. 725 ILCS 5/115-10; 725 ILCS 5/115-7.3. In Illinois, evidence of other sex crimes can be admitted to show a

---

[2] Petitioner originally included in this section a claim that the trial court erred by granting the state's motion to obtain DNA results. However, the Court already found that claim to be non-cognizable.

defendant's propensity to commit the crime if the probative value outweighs the prejudicial effect.   Thus, the Appellate Court found that the trial court properly allowed evidence regarding an incident of sexual contact between petitioner and M.P. which occurred in Monroe County.   Further, the Appellate Court found the admission of the sheriff's deputy testimony to be allowable under the statute.   As the Appellate Court's findings on the evidentiary issues was a matter of state law, this Court cannot review those decisions unless petitioner can show that the incorrect decision was so prejudicial that it violated his due process rights and created a likelihood that an innocent person was convicted.   Here, petitioner has not met that burden.   Petitioner has not shown that he was prejudiced such that an innocent person was convicted.   There is nothing in the record to suggest that petitioner's conviction hinged on this evidence.   Further, there was testimony and other evidence in the record that supported petitioner's guilty.   Thus, the Court also finds these claims non-cognizable.

## C.    Merits of Remaining Claims

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA.   "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."   *Bell v. Cone*, 535 U.S. 685, 693, 122 S.Ct. 1843 (2002).

Habeas is not another round of appellate review.   Federal courts do

not review state court determinations of state law questions on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475 (1991); *Bloyer v. Peters*, 5 F.3d 1093, 1098 (7th Cir. 1993).   §2254(d) restricts habeas relief to cases wherein the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The issue for this Court on habeas is whether the state court's decision was "contrary to" or constituted an "unreasonable application of" Supreme Court precedent.   28 U.S.C. §2254(d)(1).   "Avoiding these pitfalls does not require citation to [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."   *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362 (2002) (emphasis in original).   The Supreme Court most recently announced that in reviewing a habeas petition, the reviewing court must decide if "fairminded jurists could disagree" that a state court decision conflicts with Supreme Court precedent.   *See Harrington v. Richter*, -- U.S.--, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011); *Cullen v. Pinbolster*, --U.S.--, 131 S.Ct. 1388, 1402, 179 L.Ed.2d 557 (2011).

The Seventh Circuit has noted that the scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1).   *Jackson*

*v. Frank*, 348 F.3d 658, 661 (7th Cri. 2003). The unreasonable application standard is "a difficult standard to meet." *Id*. at 662. Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion." *Id*. at 662 (internal citation omitted).

### 1.    Ineffectiveness of Trial Counsel

Petitioner argues that his trial counsel was ineffective in numerous ways. Whether counsel was ineffective is governed by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Seventh Circuit has emphasized that, when considering a claim of ineffective assistance of counsel on habeas cases, federal courts must honor any "reasonable" state court decision; "only a clear error in applying *Strickland's* standard would support a writ of habeas corpus." *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997). Both the *Strickland* standard and a review under § 2254 are highly differential on their own, but "when the two apply in tandem, review is 'doubly' so." *Harrington*, --U.S.--, 131 S.Ct. at 788, *Cullen,* 131 S.Ct. at 1403, 179 L.Ed.2d 557 (counsel strongly presumed to have rendered adequate assistance and review of assistance under habeas is "doubly deferential."). *Strickland* requires that a petitioner on an ineffective assistance of counsel claim prove (1) that counsel's performance "fell below an objective standard of reasonableness" ("the performance prong"), and (2) "that the deficient performance prejudiced the defense" ("the prejudice prong").

*Strickland*, 466 U.S. at 688, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674.   To establish

prejudice, a petitioner must show that there is a "reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been

different."   *Morgan v. Hardy*, 662 F.3d 790, 802 (7th Cir. 2011)(quoting

*Strickland*, 466 U.S. at 693, 104 S.Ct. 2052, 80 L.Ed.2d 674); *Newman v.*

*Harrington*, Case No. 12-3725, --F.3d--, 2013 WL 4033893 (7th Cir. Aug. 9, 2013).

In order for the writ to issue, a habeas petitioner must satisfy both prongs of the

*Strickland* analysis.   However, there is no mandatory order for the analysis, and a

habeas Court does not need "to address both components of the inquiry if the

defendant makes an insufficient showing on one."   *Id.* at 697, 104 S.Ct. 2052, 80

L.Ed.2d 674.

### a. failure to investigate and obtain pertinent available evidence and call alibi witnesses (Claim 1a & b)

Petitioner argues that his trial counsel was ineffective for failing to

obtain two forms of evidence and alibi witnesses.   Those forms of evidence include

Dr. Walls and a letter from Dr. Walls indicating that Petitioner was at the doctor's

office on January 22, 2001 with his wife when she took P.G.'s half-brother to the

doctor, and cell phone records for January 31, 2001.[3]   Petitioner argues that the

evidence from Dr. Walls would show that he was at the doctor's officer with P.G.'s

mother and could not have committed the sexual assault that P.G. alleges occurred

---

[3] Petitioner raised several others issues involving evidence and alibi witnesses in which petitioner argued his trial counsel was ineffective in failing to obtain and utilize at trial.   However, the Court found those claims to be procedurally defaulted.   These two claims are the only claims which were not procedurally defaulted.

that day.   Petitioner also argues that cell phone records from January 31, 2001 show that he was in North Carolina on January 31, 2001 and Carbondale, IL on February 1, 2001, and, thus, could not have sexually assaulted M.P.

The Appellate Court found that this testimony and evidence would not have been proof of petitioner's innocence.   While Dr. Walls might have testified that petitioner was at the doctor's appointment with his wife, the Appellate Court noted that P.G. testified the sexual assault took place after petitioner returned from the doctor's office and her mother left for the pharmacy.   Thus, Dr. Walls testimony would not have shown that petitioner was somewhere else when the assault took place.   Likewise, with the cell phone records, while the records did demonstrate that petitioner was in North Carolina on January 31, 2001, M.P. testified that the assault took place sometime between January 31 and February, after petitioner returned from North Carolina and thus the cell phone records did not prove petitioner's innocence.   The Court finds these conclusions to be reasonable in light of the facts.

Petitioner, nevertheless, now argues that his counsel was ineffective for failing to obtain these forms of evidence and failing to present them at trial. However, as the Appellate Court found that this evidence would not prove Petitioner's innocence, the Court fails to see how the failure to present this evidence at trial prejudiced Petitioner.   The evidence does not prove that petitioner did not commit the sexual acts against P.G. and M.P. and, as previously stated, there was ample evidence in the record with which a jury could have found petitioner guilty

and no reasonable probability that he would not have been found guilty.   Thus, the Court finds Petitioner's ineffective assistance claim to be meritless.

### b.    failure to file certain pretrial and post-trial motions (Claim 1c)

Petitioner also argues that his trial counsel was ineffective in failing to file a number of pre-trial and post-trial motions.

### 1.    Motion to Dismiss

Petitioner argues that his trial counsel was ineffective in failing to file two motions to dismiss, one because the DNA results were negative as to petitioner and a second motion to dismiss based on speedy trial violations.

As to the DNA results, petitioner argues that his counsel should have filed a motion to dismiss because the DNA found on M.P.'s mattress did not originate from Petitioner.   Here, the Court finds that the Appellate Court's finding that the trial court would not have dismissed the case based on the DNA results was reasonable.   The Appellate Court reasoned that the DNA evidence, though it did not match petitioner, was found on M.P.'s mattress.   However, neither P.G. nor M.P. testified that Petitioner had sexual intercourse with either of them on M.P.'s bed.   Instead, they testified that they had intercourse with petitioner on petitioner's bed, the couch, the basement, and on Petitioner's mail route.   Thus, the Appellate Court reasonably concluded that the DNA results did not exclude petitioner as the perpetrator and there was no reasonable probability that the trial court would have dismissed the case on those grounds.

Petitioner also argues that his trial counsel should have filed a motion to dismiss on the basis of a violation of his speedy trial rights. Petitioner argues that the State improperly delayed the trial by seeking a continuance in order to obtain the DNA results which they later determined to be non-material. Petitioner believes that his counsel should have sought dismissal of the case because of the improper delay. The Appellate Court, in applying the *Strickland* test, found counsel was not ineffective for failing to file a motion to dismiss on this ground as there was no lawful basis of arguing a speedy-trial violation. They noted that the Illinois Code of Criminal Procedure allows for the State to obtain a continuance to obtain the results of a DNA test and the State in this case sought such a continuance in order to obtain the DNA results from the DNA found on M.P.'s mattress.

However, petitioner makes much of the fact that the Code allows for a continuance for DNA material to the case and the DNA turned out not to be material as it did not match petitioner. Petitioner's logic is incorrect. At the time that the State sought a continuance, they did not know who the DNA belonged to and thus they sought a continuance to determine the origins of the DNA. It was only after the DNA results were obtained that it was learned the DNA did not belong to petitioner. The only way for the State to determine if the DNA was relevant to the case, was to seek the DNA results. Thus, petitioner's argument that the State sought a continuance to obtain "non-material" DNA evidence is unfounded.

### 2.    *Motion for Directed Verdict*

Petitioner also argues in his petition that his trial counsel should have

filed a motion for directed verdict as there were inconsistencies in the State's witness testimony and no physical evidence.      Petitioner argues that if counsel had pointed out these inconsistencies, there was a high probability a motion for directed verdict would have been granted.   However, the Appellate Court reasonably found that such a motion would not have been granted as many of the inconsistencies pointed out by petitioner were not actual inconsistencies but rather issues of timing of events related to the sexual assault which were fleshed out and explained during trial testimony.   The Appellate Court found any remaining inconsistencies to be insignificant.   For instance, one such inconsistency related to the testimony regarding the sexual assault which occurred while M.P. was with Petitioner on his mail route.   M.P. testified that she took napkins from the truck but also testified that petitioner had the napkins before they went into the woods.   However, testimony as to who had the napkins would be insignificant as to whether petitioner sexually assaulted M.P. when they went into the woods.   Further, petitioner has failed to show how any of the inconsistencies would have made the evidence insufficient to prove his guilt.   As the Appellate Court found, many of the alleged inconsistencies were insignificant to the issue of petitioner's guilt.   Thus, the Court finds that the Appellate Court was reasonable in finding that a motion for directed verdict would not have been granted based on the inconsistencies noted by Petitioner.

### 3.   *Motion on Newly Discovered Evidence*

Petitioner also argues that his trial counsel was ineffective for failing to

file a motion to present newly discovered evidence.     Petitioner states that prior to his sentencing, his wife obtained a letter from the doctor's office and pharmacy receipts which he believed gave him an alibi for the sexual assault on P.G. in January 2001.   Petitioner states that he asked his counsel to file *something* to get the evidence in the record, but his counsel failed to file any motion.   Petitioner believes he would not have been convicted of the sexual assault against P.G. if counsel had filed the motion.

In his post-conviction proceeding, petitioner argued that his trial counsel was ineffective for failing to file a motion to dismiss the count alleging he sexually assaulted P.G. in January 2001 because pharmacy receipts showed that petitioner was elsewhere when the sexual assault allegedly took place.   P.G. testified that the sexual assault took place while her mother was at Wal-mart picking up a prescription.   The Appellate Court found that the receipt did not indicate that petitioner was present with his wife when she picked up the prescription as only Michelle Blake, petitioner's wife, signed the receipt.   Nothing in the newly presented evidence suggested that petitioner had an alibi for the sexual assault that occurred in January.   P.G. testified that she was sexually assaulted while her mother was at Wal-mart, and that her mother returned home from the doctor's office before leaving again for Wal-mart.   Thus, Dr. Walls letter indicating that petitioner was at the doctor's appointment does not provide petitioner with an alibi as P.G. testified the assault took place after Petitioner and her mother returned from the doctor's office and her mother left for the pharmacy.   Further,

the Wal-mart prescription receipt does not indicate that petitioner was with his wife at Wal-mart during the time the assault took place.   Thus, the Appellate Court was reasonable in finding that the court would not have granted a motion to dismiss based on the new evidence.

### 4.   *Motion for New Trial*

As for petitioner's argument that his trial counsel was ineffective for failing to set forth trial errors, petitioner does not explain what those trial errors were that his counsel should have set forth.   Petitioner merely states in his petition that his counsel merely filed a general form for a motion for new trial and failed to actually look through the record and raise trial errors.   Petitioner, however, does not specify what errors his trial counsel should have raised.   Petitioner does not expand on this issue in his Reply brief.   Rather, he lists "new trial" as a section in his brief but does not include any arguments in the section (See Doc. 37 at p. 24). Petitioner, thus, has not set forth any facts to support his claim that trial counsel was ineffective in failing to file an adequate motion for new trial.   According, the Court finds that this claim is unreviewable under Rule 2(c) of the Rules Governing Section 2254.   *See* Rules Governing Section 2254 Cases, Rule 2(c) (A petition must "specify all the grounds for relief available to the petitioner…[and] state the facts supporting each ground.").

### c.   *failure to give an opening statement (Claim 1d)*

Petitioner argues that his trial counsel was ineffective for failing to give an opening statement.   Petitioner indicates that his counsel informed the judge

that after the prosecutor had given his opening statement, that he was reserving his opening statement until the state concluded its case, but when the state concluded, counsel merely called his first witness and did not put on an opening statement.

Here, the Court finds that the Appellate Court properly applied the principles set forth in *Strickland.*   Although not specifically referring to *Strickland*, the Appellate Court relied on Illinois decisions which rely on Strickland and its principles.   *See People v. Flores*, 231 Ill.App.3d 813, 820, 596 N.E.2d 1204, 1209 (4th Dist. 1992); *People v. Penrod*, 316 Ill.App.3d 713, 724, 737 N.E.2d 341, 352 (5th Dist. 2000).   The Appellate Court indicated that when evaluating a counsel's decision to waive an opening statement, the court must evaluate counsel's decision in light of the totality of counsel's performance, citing *People v. Rodriquez*, 364 Ill.App.3d 304, 313, 846 N.E.2d 220, 227 (2nd Dist. 2006) (citing *Strickland* standards).   This is the same standard employed by the Seventh Circuit in evaluating a counsel's performance.   *See Valenzuela v. United States*, 261 F.3d 694, 698-99 (7th Cir. 2001)("[W]e 'consider the reasonableness of counsel's conduct in the context of the case as a whole, viewed at the time of the conduct, and there is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategy.'" (quoting United States v. Lindsay, 157 F.3d 532, 535 (7th Cir. 1998)).   Looking at the totality of counsel's performance, the Appellate Court determined that counsel's decision not to present an opening statement was not unsound as counsel vigorously cross-examined witnesses, presented testimony on defense, and argued at closing that the State failed to meet

its burden.   The Court finds this conclusion to be reasonable.   As respondent points out, the Seventh Circuit has held that whether "to make an opening statement to the jury is at the discretion of trial counsel" and counsel's case was short with only two witnesses testifying prior to offering closing arguments.   *See United States v. Mealy*, 851 F.2d 890, 909 (7th Cir. 1988).   Thus, the Court finds the Appellate Court's determination that trial counsel was not ineffective to be reasonable.

### d.   *failure to give an effective closing argument (Claim 1e)*

The Court similarly finds that the Appellate Court's decision regarding counsel's closing argument was not unreasonable.   Petitioner argues that his trial counsel was ineffective because he failed in closing arguments to highlight the defense's theory, point out inconsistencies in the state's testimony, point out that there was no physical evidence, and that DNA found did not originate from Petitioner.   However, it is sound trial strategy for counsel to focus in closing on the elements that counsel believes provides the best chance of success.   *See Foster v. Schomig*, 223 F.3d 626, 638 (7th Cir. 2000).   In the Appellate Court's decision, the court found as much, finding that counsel's closing arguments in light of the trial record was reasonable and the failure to focus on the points that Petitioner felt were important did not prejudice Petitioner.   Thus, the Court finds the Appellate Court's findings to be a reasonable application of *Strickland.*

### e.   *failure to properly cross-examine state witnesses (Claim 1f)*

Petitioner also argues that his trial counsel was ineffective for failing to properly cross-examine the State's witnesses.   Although respondent is correct that petitioner does not specifically state in his petition which witnesses petitioner is referring to, how his counsel's cross-examination was deficient, and what, if any, prejudice resulted from counsel's conduct, the Court presumes that petitioner is referring to the instances of inconsistent statements that were noted in his post-conviction collateral proceeding at the state level.   In that proceeding, petitioner argued that trial counsel was ineffective for failing to cross-examine Detective Krull on inconsistencies.   The state court found that a majority of the statements made by Detective Krull were not inconsistent as petitioner argued and that the genuine inconsistencies were insignificant so that counsel's failure to cross-examine on those inconsistencies prejudiced the petitioner.

The Court finds that the Appellate Court's findings were reasonable. Cross-examination is an issue of trial strategy which is given great deference. *United States v. Hirschberg*, 988 F.2d 1509, 1513 (7th Cir. 1993).   Further, a trial counsel is "not required to pursue every conceivable line of questioning." *McMillian v. United States*, Case No. 08 C 5828, 2010 WL 3526500 at *7 (N.D. Ill. Sept. 1, 2010)(Holderman, J.)(citing *Hirschberg*, 988 F.2d at 1513). Here, petitioner has failed to offer any evidence that the cross-examination of Krull by his counsel was not reasonable.   To the extent petitioner argues that his counsel should have cross-examined the two alleged victims in this case more thoroughly, the Court also finds that counsel's strategy was reasonable given that both victims

were young and sympathetic.  *See Bergmann v. McCaughtry*, 65 F.3d 1372, 1379-80 (7th Cir. 1995).   Further, as respondent points out, counsel also offered the testimony of the victim's mothers who testified that she believed that her daughters were lying about the sexual assault.   Such testimony was used to discredit the two victim's testimony.   Thus, looking at counsel's strategy as a whole, it cannot be said that his decision not to cross-examine the victims to petitioner's liking was deficient.

Petitioner also makes much of an alleged statement by respondent that M.P. and P.G. saw each other engaged in an act of sexual intercourse with Petitioner.   Petitioner argues that the testimony was only that M.P. saw P.G. holding petitioner's penis like a microphone and that would be considered sexual contact and not evidence of sexual assault.   Petitioner's argument, however, is incorrect.   Respondent notes in his response that one of the issues raised in the state post-conviction case was trial counsel's failure to cross-examine the victims on their seeing sexual acts between petitioner and the other victim.   Respondent does not distinguish whether these were sexual assaults or sexual contact and the state court only focused their analysis on the cross-examination of Detective Krull.   Further, the Court finds that petitioner's apparent argument that this sexual *contact* was the only evidence against petitioner and thus he could not be guilty of sexual *assault* is meritless.   This encounter with P.G., which M.P. testified to, was just one of the alleged encounters with P.G. that were testified to at trial.   This incident was not the only evidence regarding a sexual assault on P.G.   There was

other evidence of a sexual assault and P.G. testified as to other occasions where she had sexual intercourse with petitioner.    Thus, petitioner's argument is unfounded.

### 2.    Prosecutorial Errors

#### a.    *withheld DNA results*

Petitioner alleges a number of prosecutorial errors.   Petitioner first alleges that the prosecutor created a violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) by withholding DNA results from the defense.   Petitioner argues that the Appellate Court incorrectly found that the DNA results were turned over to the defense on August 16, 2001 when that was the date that the crime lab presented the results to the State.

Under the rule established in *Brady*, a prosecutor is required to disclose evidence "that is both favorable to the defense and material to either guilt or punishment."  *Badelle v. Correll*, 452 F.3d 648, 655 (7th Cir. 2006)(citing *Kyles v. Whitley*, 514 U.S. 419, 432-34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *United States v. Bagley*, 473 U.S. 667, 674-75, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).  If the prosecution instead suppresses the evidence, then defendant is both deprived of a fair trial and his due process rights are violated.  *Id*. (citing *Brady*, 373 U.S. at 86-87, 83 S.Ct. 1194, 10 L.Ed.2d 215).   In order to establish a *Brady* violation, Petitioner must demonstrate that "(1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to an issue at trial."  *Id.*  Evidence is material if "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the

proceeding would have been different.'" *Id*.

Here, the Appellate Court cited to *Brady* and the elements a defendant must meet in order to prevail on a *Brady* claim.   The Appellate Court found that the prosecution did not violate *Brady* because the DNA evidence was not suppressed but in fact was turned over to Petitioner's attorney on August 16, 2001. Thus, the Court finds that the Appellate Court properly applied the principles set forth in *Brady*.

However, Petitioner argues that the Appellate Court's finding that *Brady* was not violated was unreasonable because petitioner maintains that his counsel never received the DNA evidence from the State.   Instead, petitioner argues that the August 2001 date was the day that the crime lab gave the DNA results to the prosecutor, but that petitioner's counsel never received a copy of the results.   The record, however, reflects that on August 16, 2001, the prosecutor gave supplemental discovery to Petitioner's counsel which included the DNA results from the crime lab (Doc. 22 Ex. O at C276-79).   Thus, the Court concludes that petitioner's counsel did receive the DNA results prior to the trial and the Appellate Court's finding that the evidence was not suppressed in violation of *Brady* was reasonable.

### b.     *gave personal opinion during closing arguments*

Petitioner also argues that the prosecutor erred when he gave his personal opinions during closing arguments regarding the credibility of the witnesses.   In closing arguments, the prosecutor, when discussing P.G.'s

testimony regarding petitioner's January 2001 sexual assault of P.G. on the day her mother was at the doctor, stated "Was [P.G] wrong on th[e January 22, 2001] date or was she right on that date?   Did [Petitioner] go to the doctor or did he not go to the doctor?   We believe that obviously someone was not quite telling the truth, and my argument is going to be obviously that [petitioner] and Mrs. Blake are not telling the truth.   We believe that [P.G.] is correct."   (Doc. 22 Ex. Q).   Petitioner argues that this personal opinion was improper.   The Appellate Court found that the argument was not the prosecutor's opinion but that he was merely arguing what the evidence demonstrated.   The Appellate Court found that even if the statement was improper, the comments did not contribute to his conviction and the jury would not have acquitted Petitioner if the prosecutor had not made the statements.

Whether a prosecutor's closing arguments constitute a constitutional violation are governed by the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).   In *Darden*, the Supreme Court set out a two prong test where the court must first look at the challenged statements and determine if they are improper, and, if so, then the court must consider a number of factors to determine if a defendant was prejudiced by those comments.   *Ellison v. Acevedo*, 593 F.3d 625, 636 (7th Cir. 2010) (citing *Darden*, 477 U.S. at 181, 106 S.Ct. 2464, 91 L.Ed.2d 144); *see also Ruvalcaba v. Chandler*, 416 F.3d 555, 565 (7th Cir. 2005); *United States v. Tucker*, 714 F.3d 1006, 1012 (7th Cir. 2013); *United States v. Smith*, 674 F.3d 722, 728-29 (7th Cir. 2012).   Those factors include: "(1) whether the prosecutor misstated the evidence ,

(2) whether the remarks implicate specific rights of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut." *Ruvalcaba*, 416 F.3d at 565 (citing *Howard v. Garmley*, 225 F.3d 784, 793 (7th Cir. 2000)).   In determining whether the comments were prejudicial, it is not enough that the remarks were undesirable or universally condemned, but "the relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."   *Darden*, 477 U.S. at 181, 106 S.Ct. 2464, 91 L.Ed.2d 144.

Here, while the Appellate Court did not cite to *Darden*, it did apply the right principle under the first factor, finding that the statements were not improper as the statements were based on the evidence presented at trial.   While the Appellate Court noted that a prosecutor cannot normally vouch for the credibility of a witness, a prosecutor can comment on credibility if it is based on the evidence. The Appellate Court found that the prosecutor's comments were based on the evidence as the prosecutor was discussing P.G.'s testimony regarding the January 2001 assault.   The Seventh Circuit also allows for such comments on the credibility of a witness' testimony if reasonably inferred from the evidence at trial. *United States v. Goodapple*, 958 F.2d 1402, 1409-10 (7th Cir. 1992); *United States v. Bowman*, 353 F.3d 546, 551 (7th Cir. 2003); *United States v. Iacona*, Case No. 12-1632, --F.3d--, 2013 WL 4516750 (7th Cir. Aug. 27, 2013).   Further, such comments are allowed when the case hinges on witness credibility, *see*

*Bowman*, 353 F.3d at 551, and petitioner acknowledges that the case amounted to a "he said she said" making the prosecutor's comments regarding credibility proper.   Thus, there is nothing to suggest that the Appellate Court's characterization of the testimony was unreasonable.   Further, the Appellate Court found that the statements were not so egregious to have contributed to Petitioner's conviction.   Viewing the *Darden* factors, the record reflects that the trial court instructed the jury that closing arguments were not evidence (See Doc. 22 Ex. Q at C690, C727).   *Hough v. Anderson*, 272 F.3d 878, 904 (7th Cir. 2001).   Further, the Appellate Court stated on numerous occasions in its opinion that there was substantial evidence of petitioner's guilt.   Thus, the Court finds that, even if the statements were improper, the Appellate Court reasonably applied *Darden*'s second prong in finding that Petitioner was not prejudiced.

### c. *allowed false testimony to go uncorrected*

Petitioner also argues that he was denied a fair trial and due process when the State allowed known perjured testimony to go uncorrected by Detective Krull, M.P., and P.G.   Petitioner also argues that the State had the two victims change their testimony mid-trial.

A prosecutor's knowing use of false testimony violates a defendant's due process rights under the United States Constitution.   *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (citing *United States v. Agurs*, 427 U.S. 97, 103 & n.8, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Pyle v. Kansas*, 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214 (1942)).   In order to establish that an individual's due

process rights have been violated, a petitioner must established that: "(1) the prosecution's case included perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a reasonable likelihood that the false testimony could have affected the judgment of the jury." *Shasteen v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001) (citing *United States v. Saadeh*, 61 F.3d 510, 523 (7th Cir. 1995); *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990)). Mere inconsistencies in testimony by State witnesses are not enough but a petitioner also need not prove that the testimony was "knowingly false (and hence perjury)." *Shasteen*, 252 F.3d at 933 (citing *Verser*, 916 F.2d at 1271; *United States v. Boyd*, 55 F.3d 239, 243 (7th Cir. 1995)). "It is enough that the jury was likely to understand the witness to have said something that was, as the prosecution knew, false." *Id.* The Court must also look at whether the defendant had an adequate opportunity to cross-examine the witness in order to expose the false testimony. *Id.*

Although the Appellate Court did not cite to any federal cases, it properly applied to same standard as federal law, that knowing use of false testimony violates defendant's due process rights. The Appellate Court reviewed the testimony petitioner alleged to be knowingly false and found only minor inconsistencies that did not amount to the level of false testimony. In petitioner's current habeas petition, he has not specifically cited to which statements he believes the prosecutor allowed to go uncorrected, merely stating that three of the state's witnesses committed perjury and that the State had materials in its

possession which would have contradicted the trial testimony.   In his reply brief, petitioner merely argues that if his counsel had not been ineffective, the inconsistencies could have been exposed on cross-examination.   However, mere inconsistencies in testimony among the witnesses is not enough to violate the due process.   In order for petitioner to prevail he must show that the State's case included perjury which the prosecutor knew to be perjured testimony.   The Appellate Court reviewed the testimony and found the testimony to be minor inconsistencies that did not prejudice the Petitioner.   Petitioner has failed to point to any errors on the part of the Appellate Court in forming that conclusion. *Badelle*, 452 F.3d at 656 (citing *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (it is petitioner's burden to show state court applied federal law unreasonably).   Thus, the Court finds that the Appellate Court's determination that the testimony was not false and did not prejudice the petitioner to be reasonable.

### 3.    Direct Appeal Counsel Errors

Petitioner also maintains that his direct appeal's counsel was ineffective for failing to raise other issues of error from the one issue that he raised on appeal.   While petitioner does not indicate what issues of appeal should have been raised, he refers the Court to the issues raised in the post-conviction petition. In that petition, petitioner argued that his direct appeal's counsel should have raised the issue of (1) trial counsel's ineffectiveness, (2) prosecutorial misconduct, and (3) suppression of evidence by defense and prosecutor.   Petitioner argues that

the Appellate Court's findings were unreasonable because, petitioner argues, anytime counsel fails to raise an issue on appeal that issue is forfeited for review in the federal court.

The Seventh Circuit has recently stated that appellate counsel is not required to present every non-frivolous claim on behalf of their client but are allowed to raise strong arguments over weak ones. *Shaw v. Wilson*, 721 F.3d 908, 915(7th Cir. 2013)(citing *Jones v. Barnes*, 463 U.S. 745, 752-53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). However, appellate counsel is expected to raise the most promising arguments so that if counsel abandons a non-frivolous claim "that was both obvious and clearly stronger than the claim" actually presented on appeal, his performance could be considered deficient. *Id*. (internal quotations omitted)(quoting *Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000)).   The Seventh Circuit has noted that this presents a difficult standard for a petitioner to meet "because the comparative strength of two claims is usually debatable." *Id*.

Here, the Court finds the Appellate Court's findings to be a reasonable application of federal law.   While citing to Illinois precedent, the Appellate Court also noted that while appellate counsel is allowed to present the strongest arguments and not required to present every non-frivolous claim, counsel could be ineffective when the failure to raise a claim was unreasonable and would reasonably result in a new trial or a reverse of conviction.   Using this standard, the Appellate Court found that appellate counsel was not ineffective in failing to raise the three

issues cited to by petitioner as the Appellate Court had found those claims in his petition meritless.   Specifically, the Appellate Court found that the DNA evidence was not suppressed as petitioner alleged and that trial counsel was not ineffective for failing to file a motion to suppress.   This Court likewise has found the claims that petitioner believes his appellate counsel should have raised to be meritless when raised in his current petition.   Thus, the Appellate Court's finding likewise was not unreasonable.

**D.     Certificate of Appealability**

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   A petitioner cannot appeal a dismissal of his habeas petition unless he obtains a Certificate of Appealability.   See 28 U.S.C. § 2253(c)(1).   A Certificate of Appealability may only be issued where the petitioner "has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2); *Evans v. Circuit Ct. of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009).   This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists could debate whether…the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."   *Mill-el v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). While a petitioner need not show that his appeal will succeed, he must show

"something more than the absence of frivolity" or the existence of mere "good faith" on his part.  *Id.* at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)).  Here, the undersigned finds no basis for a determination that its decision to dismiss Petitioner's claims was debatable or incorrect.  Petitioner's claims were dismissed because they were either procedurally defaulted or non-cognizable, both grounds which a reasonable jurist would not find debatable.  His other claims were denied as meritless. Accordingly, the Court **DENIES** Petitioner a Certificate of Appealability in this case.

## IV.   Conclusion

Therefore, the Court **DENIES** Petitioner's § 2254 petition for writ of habeas corpus and **DISMISSES with prejudice** all of the claims he raises as either procedurally defaulted, non-cognizable, or meritless.  The Court further **DENIES** Petitioner a Certificate of Appealability under 28 U.S.C. § 2253(c).  Lastly, the Court DIRECTS the Clerk of the Court to enter judgment reflecting the same.

**IT IS SO ORDERED**.

DATED: September 16, 2013.

Digitally signed by
David R. Herndon
Date: 2013.09.16
12:33:22 -05'00'

**Chief Judge**
**United States District Court**